## WRIGHT v. BERGER.

(Supreme Court, Appellate Term.   February 5, 1909.)

CORPORATIONS (§ 120*)—SALE OF STOCK—AGREEMENT TO REPURCHASE—TENDER OF PERFORMANCE—WAIVER.

A statement by a seller of corporate stock, who agreed at the time of sale to repurchase it for the same price if the buyer held it for a year, made about five months after the expiration of the year, was made too late to amount to a waiver of a tender of the stock to him at the expiration of the year or within a reasonable time thereafter, otherwise essential to bind the seller to his contract to repurchase.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 120.*]

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by George Wright against Emil Berger.   From a judgment for plaintiff, and from an order denying a motion to set aside the verdict, defendant appeals.   Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and SEABURY, JJ.

Frederick Hemley, for appellant.
Wasserman & Jacobus, for respondent.

SEABURY, J.   The plaintiff claims that the defendant sold to his assignor 200 shares of stock at $2.50 per share, and that at the time of the sale the defendant agreed that the plaintiff's assignor should not lose by the purchase, and that if he held it for a year the defendant would repurchase it at the same price.   The year expired February 16, 1908.   There was no evidence of a tender of the stock to the defendant at the expiration of the year, or within a reasonable time thereafter.   The plaintiff contends that tender was waived by the statement of the defendant made in July, 1908.   This statement was made too late to enable the plaintiff to recover upon the theory that tender was waived.

The judgment is reversed, and a new trial ordered, with costs to appellant to abide the event.   All concur.

---

## RICHARDSON v. RICHARDSON.

(Supreme Court, Special Term, Kings County.   April 30, 1906.)

1. HUSBAND AND WIFE (§ 3*)—ABANDONMENT BY WIFE—GROUNDS.

That a wife had ceased to love her husband and would not live with a man she did not love was not sufficient ground for her abandoning him.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 3.*]

2. HUSBAND AND WIFE (§ 1*)—NATURE OF RELATION—"MARRIAGE."

Marriage is a civil contract, and the wife owes to the husband the same full performance of marital duties that he owes to her.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4390–4398; vol. 8, p. 7717.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. DIVORCE (§ 53*)—RIGHT TO RELIEF—GOOD FAITH OF PLAINTIFF.

The right to be relieved from a marriage contract, as in all cases of contract, must be predicated as well upon the good faith and honest performance of the complaining party as upon the bad faith and non-performance of the other party.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 188; Dec. Dig. § 53.*]

4. DIVORCE (§ 54*)—DEFENSES—BREACH OF CONTRACT BY COMPLAINING PARTY.

Where a wife first broke her marriage contract by abandoning her husband without legal cause, she forfeited her right to demand relief from her husband's subsequent breach of the contract.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 192, 195; Dec. Dig. § 54.*]

5. DIVORCE (§ 45*)—ADULTERY—CONNIVANCE, PRIVITY OR PROCUREMENT.

Under the statute making it obligatory upon plaintiff seeking a divorce for adultery to prove that the adultery was without his or her consent, connivance, privity, or procurement, the existence of either condition is sufficient to defeat recovery.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 162; Dec. Dig. § 45.*]

6. WORDS AND PHRASES—"CONSENT."

"Consent" is a thinking together, an agreement of one with another to the doing of something, leaving something undone, waiving something, or permitting some act or deed or course of conduct. It need not be written, but may be spoken or acted; or may be implied.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1437–1441; vol. 8, p. 7612.]

7. DIVORCE (§ 45*)—ADULTERY—CONSENT OF PLAINTIFF.

Where a wife admittedly knew that by her leaving her husband he would be naturally induced to seek the embraces of other women, and was satisfied that while she lived with him, keeping her marital obligations, he had kept all his obligations to her, and yet deliberately abandoned him, her act constituted her consent to his subsequent adultery.

[Ed. Note.—For other cases, see Divorce, Dec. Dig. § 45.*]

8. WORDS AND PHRASES—"CONNIVANCE."

"Connivance" means "winking at," failing to prevent, helping by not hindering, taking no active hand, but standing by and knowingly promoting, aiding, and abetting, by not opposing or using means to prevent or protesting against; a condition where all power, authority, influence, and action to prevent the execution of a thought or purpose are intentionally withheld.

[Ed. Note. Note.—For other definitions, see Words and Phrases, vol. 2, p. 1435.]

9. WORDS AND PHRASES—"PRIVITY."

"Privity" expresses a condition where one knows or believes that another contemplates committing an act, and wrongfully conceals such knowledge, or pays no attention to the information, or covertly aids in the work.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5606–5611; vol. 8, p. 7764.]

10. WORDS AND PHRASES—"PROCUREMENT."

"Procurement" denotes direction, influences, personal exertion, interference, or other action, with knowledge or belief that such action would produce certain results, which results are produced.

11. DIVORCE (§ 45*)—PROCEEDINGS—EVIDENCE—ADULTERY—CONNIVANCE.

The wife was also guilty of connivance.

[Ed. Note.—For other cases, see Divorce, Dec. Dig. § 45.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

12. DIVORCE (§ 45*)—PROCEEDINGS—EVIDENCE—ADULTERY—PRIVITY AND PRO-
CUREMENT.

The wife was chargeable with privity and procurement by having de-
liberately and confessedly influenced her husband's conduct by her own
conduct and aided him in and brought about his immoral behavior.

[Ed. Note.—For other cases, see Divorce, Dec. Dig. § 45.*]

13. DIVORCE (§ 124*)—ABSOLUTE DIVORCE—SUFFICIENCY OF PROOF.

Absolute divorce should not be granted unless the right thereto be
fully, fairly, and clearly made out.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 392; Dec. Dig.
§ 124.*]

Divorce action by Edith C. Richardson against John W. Richard-
son. Report of referee confirmed.

The following is the opinion of Ostrander, Referee:

This is an action for an absolute divorce upon the statutory grounds.

The complaint alleges the marriage at Jersey City, N. J., on the 17th day
of September, 1898. Also, upon information and belief, that defendant com-
mitted adultery, on or about December 14, 1905, at the Grand Hotel, Broad-
way and Thirty-First street, New York City, with a woman whose name is
unknown to the plaintiff. That the adultery charged was committed without
the consent, connivance, privity, or procurement of the plaintiff. That five
years have not elapsed, etc., and that plaintiff has not voluntarily cohabited
with the defendant since the commission of the offense charged, or since the
discovery of such commission, nor has plaintiff forgiven the same. The
answer denies the allegation as to the alleged adultery, using the exact word-
ing of the complaint, and adding prayer for dismissal, etc.

It appears, from the testimony of the plaintiff and from the certified tran-
script of the marriage, that the parties were married September 17, 1898.
It also appears that, about a year and a half later, plaintiff left her husband's
bed and board of her own free will and desire, wholly on her own motion,
and without any fault or misconduct on the part of the defendant, her hus-
band. There are no children of the marriage.

The sole reason which the plaintiff gives for her abandonment of her hus-
band is that she had ceased to love him and would not live with a man she
did not love. That reason, in my judgment, is not good in law. Marriage,
in this state, is a civil contract, and each party is bound to live up to it.
The wife owes to her husband the full performance of her marital duties,
just as he owes full performance to her. By her own testimony plaintiff
broke her contract with defendant, and that without justifiable cause, or,
indeed, any cause except her own desire.

Can there be any question but that, as between plaintiff and defendant,
this contract is governed by the same rules as any other contract between
individuals or parties? I think not. It is true that adultery is a moral
crime. It is also true that the law gives to the injured party the right to
take advantage of the commission of the adultery as a reason for annulment
of the marriage contract, because it is a breach of the contract; and in such
cases the plaintiff's prayer, correctly enough, is to be relieved from the con-
tract, because of the breach of it by the defendant. By every rule of con-
struction it seems to me that the right to relief, in these cases, as in all
cases of contract, must be predicated as well upon good faith of and honest
performance by the complaining party as upon bad faith and nonperformance
on the part of the other party. I cannot subscribe to any such doctrine as
that, in the marriage relation, one party may, without cause, desert the
other and then trade on that other's not maintaining continence. Plaintiff
in the case at bar, does not "come into court with clean hands." She broke
her contract when she abandoned her husband. She also, knew when she
abandoned his bed and board (so far as being satisfied in her mind of what
the outcome would be), that this action on her part would be productive of
defendant's establishing illicit relations. Here is what she testified on the

subject: "Naturally I had an idea that he was going with other women" (after she left him). I haven't been living with him for six years. He probably would go with other women. Why? Well, I didn't live with him. Well, naturally, as I said to the referee, naturally I hadn't been living with him—was away for six years. Naturally, because I have been away for six years, I would suspect that he might be going with other women, the same as I would suspect any other man." Her conviction did not grow out of any previous conduct of defendant, but from her application to the case of general principles. "Naturally," "naturally," she says. It is not a newly formed conclusion of hers, but the present expression of her always judgment as to cause and effect. So, being sure of what would happen in case she abandoned her husband, the plaintiff practically, by her conduct, said to him: "Go your way; do as you please. I won't remain with you to keep you in the straight path you have so far walked with me. I am going home to mother." She left him, not he her, and that notwithstanding that, during the year and a half during which she lived with him, keeping her marital vows, he had never given her, by her own statement, cause of offense or reason for suspicion. When she left him, she said it was solely "because she did not love him and would not live with a man she did not love." She had lived peacefully with him for a year and a half—"had no serious quarrel"—and she took all that time to find out that she did not love him. She "gave defendant no reason" for leaving him, "simply that I was going home." Believing it to be "unnatural" for defendant to remain continent, if she left him, she proceeded to deprive him of his "natural" and rightful insurance against immorality by leaving him.

By first breaking the contract of marriage, I think that plaintiff forfeited her right to demand relief from defendant's subsequent breach of it.

The story, as told, seems mysterious, and is by no means free from suspicious circumstances. We have a Jersey City marriage; father and mother sworn to have been present, neither called to the witness stand; the marriage agreed upon a week beforehand, and taking place at noon, giving ample time for other arrangement; plaintiff "knew several ministers of the Gospel," and "Daddy" (her father) "always goes to some church," yet father and mother and plaintiff and defendant drove over to Jersey City, to a clergyman unknown to them all, to have the ceremony performed; going, too, from New York, where clergymen and magistrates and aldermen, apt in tying the nuptial knot, do very much abound. This is one of the queer incidents of an altogether curious story.

Both plaintiff's and defendant's attorneys, on the hearing, suggested that it was unnecessary to prove the marriage, as defendant admitted it, and it was further suggested that no one would seek a divorce unless really married. I required proof of the marriage, and it was furnished. As to the other suggestion, a sufficient answer to that is that illicit living is still disreputable in the estimation of really decent people, and that a woman who proves a marriage and succeeds in obtaining a divorce retains a social position which she would forfeit by confession of meretricious intercourse.

As already stated, no act of infidelity, while the parties were living together, or suspicion of any, nor trouble of any kind, is proved or claimed against the defendant. No means appear to have been taken to ever inquire what manner of life defendant was leading until about six years after plaintiff had left defendant's bed and board, to wit, in December, 1905.

These dates are noteworthy: September 17, 1898, the marriage; March, 1900, plaintiff left defendant; August, 1905, plaintiff requested her lawyer to seek for a cause of action; December, 1905, defendant detected.

Thus, without any knowledge or information, up to August, 1905, of any wrongdoing on the part of defendant, about the 1st of the last-mentioned month, more than five years after she had left her husband, plaintiff went to her lawyer, not with a known grievance, but with this proposition: "I asked Mr. Case if he could get any information on a statutory ground, and would he, if he could find out the facts for me." In December, following that interview, the first attempt was made to get proof. No explanation is made as to why that particular time was selected, or for what reason, if any, it seemed opportune and likely to lead to any discovery. Defendant was

on that occasion followed and caught, in a room in a hotel, at night in his pajamas, with a woman lying in the bed.

Plaintiff, in bringing this action, does not seem to have been influenced by a desire to obtain support, for, on the hearing, in answer to a question of defendant's attorney, her attorney disclaimed any intention of asking for alimony, a circumstance worthy of consideration in connection with the other facts in the case. Plaintiff also swears that she "has seen no other man," since her marriage, she was in love with, or that she loved more than her husband, or that she would desire to marry if free from her husband, and that "she loved him when she married him," and "while she was living with her husband he treated her well"; "acted toward her as a good husband would act towards his wife." The peculiarity, not to say mystery, of this case, is certainly not dispelled but rather strengthened by all this.

Again, the careless and inefficient action as to identification by the detectives (not unusual with that class of operatives, but none the less unsatisfactory) is another circumstance which aids in creating a general atmosphere of doubt and suspicion. Indeed, but for the testimony of the attorney for the plaintiff himself, it might well be doubted whether the woman in the bed was not the plaintiff.

Now, in addition to the mutuality of duty and obligation and to the restraints which the common law imposes in all matters of contract, alike upon the several parties to it, the statute, where divorce for adultery is sought, makes it obligatory upon the complaining party to prove that the adultery was without his or her consent, connivance, privity, or procurement. Each of these words is intended to express, and does express, a distinct and different condition or act. The disjunctive conjunction "or" makes the inhibition apply to each separately. The existence of either condition is therefore sufficient to bar a favorable decree. Upon the hearing the attorney for the plaintiff contented himself with saying: "Was such adultery committed with your consent? With your connivance? With your privity? With your procurement?" And to each question he got the monosyllabic answer, "No." I think that he should have gone further. It is a familiar rule that a person may not construe his own act or conduct, but must tell what was said or done, that the court may determine whether what was said or done constituted the act claimed. Individuals may have individual ideas of what constitutes consent, connivance, privity, and procurement, widely different from and short of what is required under the meaning of those terms as held by judicial interpretation.

We are thus brought, in further consideration of this case, to inquire what these words, "consent," etc., mean.

"Consent" is a thinking together, an agreement of one with another to the doing of something or leaving something undone, or waiving something or permitting some act or deed or some course of conduct. Consent need not be written; it may be spoken or acted, or it may be implied. Now, if the plaintiff knew, as she says she did, that, by her leaving her husband's bed and board, he would be naturally induced to seek and would seek the embraces of women, and was satisfied that, while she lived with him, keeping her marital obligations, he had kept all his obligations to her, "treating her in all things as a good husband would treat his wife," it became a grave question whether her deliberate and executed choice to desert and abandon his bed and board did not constitute consent to his pursuit of a course of living which she swears she was satisfied that her such action would cause. I think that plaintiff "consented."

"Connivance" means "winking at," failing to prevent, helping by not hindering, taking no active hand, but standing by and knowingly (by not opposing, using means to prevent, or protesting against) promoting, aiding, and abetting the business. It is a state or condition where all power, authority, influence, and action to prevent the execution of a thought or purpose are intentionally withheld. I think that the plaintiff was guilty of connivance.

"Privity" expresses a condition where one knows or believes that another contemplates committing an act, and wrongfully conceals such knowledge or pays no attention to the information, or covertly aids in the work.

"Procurement" denotes direction, influences, personal exertion, interference, or other action with knowledge or belief that such action would produce certain results, which results are produced. If the words "privity" and "procurement" be held to apply, solely, to a particular and specific act or acts, the circumstances, with regard to the following up of defendant from the old Times Building, Park Row, New York, and the discovery at the Grand Hotel, Broadway and Thirty-First street, while having greatly the appearance of prearrangement, are by the testimony insufficient to warrant positive conclusion. I think, however, that, in a broad but an entirely legitimate sense, plaintiff is chargeable with both "privity" and "procurement" by having deliberately, confessedly, influenced her husband's conduct by her own conduct, and aided him in and brought about his immoral behavior.

It is, of course, unnecessary to argue about the sanctity and importance of the marriage relation, and the, therefore, propriety and duty of sustaining it in all its dignity and purity. To state the proposition is to demonstrate it. The law recognizes it, and all good people know that marriage is the mother of purity and virtue and the guardian angel of the human race; that the family is the home of our best affections, and the promoter of all our best achievements. For these reasons when, as now, the moral sense of a large part of the community seems to be dulled and deadened as to the importance and sacredness of the marriage tie; when honor and truth and plighted faith are so often and readily given to the winds; when trick and device, bribery and corruption, perjury and subornation of perjury, are rampant; when men and women circumvent the law by hurrying to states where divorces are made easy, swear to "permanent residence" with return tickets in their pockets, and are received back by their coteries with open arms, to presently contract other, if not always altogether untried, alliances; when one state of the Union has besmirched its statute book by creating a new cause of divorce out of an act of God; when such things are openly and shamelessly done—it is time that all right-minded people, the servants of the law as well as its ministers, should put up the bars against all such abominable and increasing wickedness. The law requires real, vital obedience, in all honesty and good faith, and it is not satisfied with cloaks and labels. It follows that absolute divorce should not be granted unless entitlement is fully, fairly, and clearly made out.

In the case at bar I am of opinion that the plaintiff is not entitled to a decree because:

1. She, confessedly, was the first to break the marriage contract, and for that reason cannot take advantage of defendant's subsequent breach of it, or claim absolution for herself and punishment for him.

2. In addition to the last-stated proposition; upon the question of consent, connivance, privity, and procurement, the plaintiff is, in my judgment, chargeable with the two first-named of these acts within the entire scope and meaning of those terms, and is chargeable also with the two last-named of such acts, on the general proposition of deliberate and contributive aid and action on her part.

Step by step from the commencement of the hearing, I have become more and more impressed with doubts as to the bona fides of this action, until at its close, and after careful review of the testimony, I have become firmly convinced that the action is collusive.

I cannot recommend a decree in favor of plaintiff, but am of opinion that her complaint should be dismissed.

George W. Case, for plaintiff.

Chas. A. McHenry, for defendant.

PER CURIAM. Referee's report confirmed.